IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Steven Anthony Banks,<br><br>                   Plaintiff,<br><br>vs.<br><br>Allied Crawford Greenville, Inc., and<br>Allied Crawford Steel, Inc.,<br><br>                   Defendants. | Civil Action No. 6:09-1337-RBH-BHH<br><br>**<u>REPORT AND RECOMMENDATION</u>**<br>**<u>OF MAGISTRATE JUDGE</u>** |

This matter is before the Court on the defendants' motion for partial summary judgment [Doc. 24] pursuant to Federal Rule of Civil Procedure 56. The plaintiff has pled claims pursuant 42 U.S.C. § 1981. The plaintiff contends that he was discriminated against on account of his race.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## **FACTUAL BACKGROUND**

The defendant, Allied Crawford, is a steel distributor with facilities in both Canada and the United States. (Marshall Dep. at 15-16.) The plaintiff was hired in or about January 2008 to work on third shift as a crane operator. (Pl. Dep. at 19.) A crane operator's primary responsibility is to load trucks with steel for delivery to customers. (Pl. Dep. at 43.) If an insufficient number of trucks require loading to keep the crew busy, however, they might also be asked to shovel rocks, organize materials, and help maintain the facility. (Pl. Dep. at 43.)

Approximately a year after the plaintiff was hired, Kevin Granger took over as the third-shift "supervisor." (Pl. Dep. at 48.) The plaintiff has testified that beginning on November 6, 2008, Granger began to verbally harass him on the basis of his race. (Pl.

Dep. at 71.) Specifically, Granger allegedly repeatedly referred to him as a "black son of a bitch" and used the "N word." *Id*. Granger also left four messages on the plaintiff's voicemail in which some racially inappropriate terms were used. (Pl. Dep. at 85.)

The plaintiff threatened to report Granger to Patrick Coburn, the plant manager, although he did not do so. (Pl. Dep. at 73.) Instead, the plaintiff played one of the voicemail messages for Richie Marshall, the second-shift "supervisor," approximately four months later. (Pl. Dep. at 73-74.) The plaintiff claims that he asked Marshall to inform Coburn of the harassment, but Ritchie failed to do so. (Pl. Dep. at 74.)

The plaintiff then decided to speak with Coburn himself. The plaintiff testified that he informed Coburn that Granger was "saying words that don't need to be said . . . and animosity [was] going on." (Pl. Dep. at 75-76.) It appears, however, that, in speaking with Coburn, the plaintiff did not specify that racial remarks had been made, explain the nature of the animosity, or play for Coburn any of the voice messages he had saved on his telephone. *Id*.

The plaintiff subsequently filed this lawsuit, while continuing his employment with the defendant. (Marshall Dep. at 71.) A few days after, on Wednesday April 29, 2009, the plaintiff called Coburn at home to complain that Granger was playing his music too loudly and that the lyrics contained the "N word." (Pl. Dep. at 36, 97; Coburn Dep. at 59.) Marshall decided to move the plaintiff to first shift to separate Granger and the plaintiff. (Pl. Dep. at 97; Marshall Dep. at 24-25; Coburn Dep. at 59.) The plaintiff was satisfied with the transfer because he did not want to continue to work with Granger. (Pl. Dep. at 100.)

A week later, however, the defendant moved the plaintiff back onto the third shift. *Id*. When the plaintiff questioned the reason for the decision, Coburn allegedly held up the plaintiff's legal Complaint and said, "the lawsuit right here, that's the reason why." *Id*.

2

It appears that around the time of the transfer, a coworker of the plaintiff's informed Marshall and Coburn of the voicemails. (Jones Dep. at 104-05.) Upon hearing them, Granger's employment with the defendant was immediately terminated, on May 5, 2009. (Marshall Dep. at 75.)

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that

specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

### I.    Race Discrimination/Harassment[1]

The defendant has moved for summary judgment on the narrow issue of whether Granger can be considered the plaintiff's supervisor, such that the defendant is vicariously liable for his conduct even in the absence of actual notice of any harassment. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment

---

[1] The plaintiff's claim is pursuant to 42 U.S.C. § 1981. It is similarly considered to claims under Title VII. *See Gairola v. Virginia Dep't of General Services*, 753 F.2d 1281, 1285 (4th Cir. 1985).

4

created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). If, however, the alleged harasser is merely a co-worker, then there must be evidence that the defendant had actual or constructive knowledge of the harassment but failed "to take prompt and adequate action to stop it."[2] *Mikels v. City of Durham, N.C.*, 183 F.3d 323, 332 (4th Cir. 1999).

In arguing that Granger cannot be considered the plaintiff's supervisor, the defendant relies on the oft cited quotation, "The most powerful indication of supervisory status is the ability 'to take tangible employment actions against the victim, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."'" *Howard v. Winter*, 446 F.3d 559, 566 (4th Cir. 2006) (quoting *Ellerth*, 524 U.S. at 761). The defendant contends that Granger had no such authority over the plaintiff and that his exclusive duty in regards to the plaintiff was to relay a list of tasks from Patrick Coburn to the plaintiff for each night's work. (Pl. Dep. at 48-49.) The plaintiff has essentially conceded as much. *See id.* The undersigned does not believe that the legal implications of such a concession, however, are as clear as the defendant would hope.

---

[2] The plaintiff has argued that summary judgment on this discrete issue is not appropriate because, no matter how it is resolved, there is no possibility that the entire claim can be dismissed. The plaintiff contends that Fed. R. Civ. P. 56 only contemplates resolution of matters which might affect the permissibility of an entire claim (except that the issue of liability may bifurcated, *see* Fed. R. Civ. P. 56(d)(2)). It is true that even a conclusion that Granger is effectively a co-worker would not end the inquiry on the harassment claim, insofar as other issues of notice and the adequacy of the defendant's response would still be relevant. The plaintiff has not cited any case authority directly on point. The plain language of Rule 56, however, says that a party claiming relief may move for summary judgment "on all or ***part of the claim***." *Id*. 56(a) (emphasis added). The word "claim" appears in the singular and implies that less than all of an individual claim may be resolved. Although there appears to be some split of authority on the matter, the undersigned would agree, in the absence of direction to the contrary, that summary judgment on part of a claim is appropriate for consideration. *See Ajir v. Exxon Corp.*, 1995 WL 261411, at *4 (N.D. Cal.) (concluding that a motion for partial summary judgment may properly be directed to only part of a claim).

To the Court, the matter is squarely governed by the Fourth Circuit's recent decision in *Whitten v. Fred's, Inc.*, 601 F.3d 231 (4th Cir. 2010). In that case, the Fourth Circuit clarified its prior rulings concerning the identification of supervisors for purposes of establishing vicarious liability in discrimination cases. *See id*. at 244. Specifically, the court emphasized the essential language from its decision in *Mikels*: "[W]e held that when considering whether a harasser was the plaintiff's supervisor, the critical question was "whether the particular conduct was aided by the agency relation." *Mikels*, 183 F.3d at 332 (internal quotation marks omitted). "The determinant is whether as a practical matter [the harasser's] employment relation to the victim was such as to constitute a continuing threat to her employment conditions that made her vulnerable to and defenseless against the particular conduct in ways that comparable conduct by a mere co-worker would not." *Id*. at 333. Therefore, "the absence of the ability to take tangible employment actions does *not* foreclose the possibility that the harasser is the plaintiff's supervisor." *Whitten*, 601 F.3d at 244.

When the plaintiff initially began work for the defendant, Granger was a "lead man," and the supervisor was an individual named Brian. (Pl. Dep. at 20-22.) During the time of the plaintiff's employment, Granger was promoted to supervisor. (Coburn Dep. at 15.) Critically, Granger was the only management personnel physically in the plant during third shift hours. (See Marshall Dep. at 26, 35.)

Moreover, there is evidence that the defendant expressly stressed to the plaintiff that Granger was in charge. Operations manager, Patrick Coburn, testified that Granger informed him that "Steven Banks thought Richie Marshall was his immediate supervisor, not Kevin Granger," so Coburn "talked to them both and ***made it very clear that Kevin Granger was Steven Banks' immediate supervisor***." (Coburn Dep. at 32.) Coburn elaborated: "I asked Steven, I said, Steven, ***do you know who your immediate supervisor is, and he told me, Kevin Granger***. Well, he said, Kevin. I said, okay, ***I just***

6

***wanted to make sure that was clear, so if Kevin asks you to do something, then you should do it.*** That was it. The conversation was over." *Id*. at 34 (emphasis added).

It appears that Granger himself also made clear to the plaintiff that he had the ability to visit adverse consequences on him. The plaintiff has produced a transcript of one of the alleged harassing voice mails Granger left for the plaintiff:

> What the fuck, you black son of a bitch. You think you can just skip out of work and take a break for whenever long as you feel like it. You've got five mother-fucking minutes to get your ass back up here or I'll clock your punk ass out any you can go the fuck home. Now hurry the fuck up.

To the Court, this evidence demonstrates both the cloak of agency covering Granger's actions and the plaintiff's own perception of such authority. The testimony of Coburn would certainly have implied to the plaintiff more authority to direct the plaintiff's activity than the defendant would now profess. It seems unlikely that Granger could have left the kind of voicemail, transcribed above, without a sense of his authority to do so and a belief that the plaintiff would apprehend its force.

These are precisely the touchstones of supervision that persuaded the *Whitten* court. There, the title, "Store Manager," alone, "strongly sugges[ed] that he had authority over" the plaintiff. *Whitten*, 601 F.3d at 245. That individual was the "highest ranking employee in the store" on the days that the plaintiff worked. *Id*. at 246. And, the supervisor could actually direct the plaintiff's activities. *Id*.

Likewise, Granger, had a superior title to the plaintiff's (Coburn Dep. at 15); he was the only supervisor at the plant when the plaintiff worked (Marshall Dep. at 26, 35); and he was expressly permitted to direct the plaintiff's conduct. (Coburn Dep. at 32, 34.) Moreover, Granger himself, as expressed above, dramatically intimated his ability to exercise consequences over the plaintiff's conduct. (See voicemail.)

The defendant rejoins that the plaintiff's own conduct demonstrates that whatever type of authority Granger enjoyed, it was insufficient to render the plaintiff vulnerable and

7

defenseless to the harassment, a telling consideration. *See Mikels*, 183 F.3d 323, 333. Specifically, the plaintiff testified that he told Granger that he was going to inform management of the harassment, wanted management to know of the harassment, and actually complained of the harassment to another coworker and asked him to inform management. (Pl. Dep. at 73, 82-83.)

But, surely, it cannot be true that simply because an employee ultimately has the fortitude to report the conduct of intermediate or ambiguous management personnel that he has somehow transformed them from binding supervisors to legally irrelevant superiors. Such a rule would produce the absurd result that an employee could never report conduct for risk of implying too little fear and trembling. Of course, an employee's response develops some import in "close cases." *Whitten*, 601 F.3d at 247. But, Granger's supervisory status does not seem in doubt to the Court and all the evidence suggests that the plaintiff reported him in spite of the real duress of authority and consequence, not in the absence of it. The plaintiff has testified that Granger was threatening and expressly warned the plaintiff that he would have him terminated if he ever reported any of Granger's conduct. (R. at 35.) Certainly possession of a recorded racial epithet would embolden you to report a supervisor under circumstances where you might otherwise be intrepid. To the Court, these facts track *Whitten* closely and should produce the same legal conclusion – that Granger was a supervisor whose acts produce vicarious consequences for the defendant. *Id*. (ruling as a matter of law). At the very least, issues of fact remain as to the duties of Granger, which would not allow for summary judgment. *Cf. York County Fire Fighters Ass'n, Local 2498 v. York*, 589 F.2d 775, 778-79 (4th Cir. 1978) ("The determination of whether an employee is a supervisor is a mixed question of law and of fact.").

## II.     Retaliation

Next, the plaintiff contends that he was retaliated against for having complained of the alleged harassment and/or for having filed this instant action. The Fourth Circuit has held that retaliation is a form of differential treatment subsumed in the anti-discrimination language of Section 1981. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543 (4th Cir.2003) (holding that a "plaintiff can prove illegal retaliation under . . . § 1981" in the same manner as he establishes retaliation under Title VII); *see also Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 174-75 (2005) (retaliation for complaints of unlawful discrimination is a form of discrimination). The *McDonnell Douglas* burden shifting scheme, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), therefore, applies in analyzing retaliation claims under Section 1981. *Bryant*, 333 F.3d 536, 543-44.

### A.     *Prima Face* Case

In order to establish a *prima facie* case of retaliation, the plaintiff must prove three elements: (1) that he engaged in a protected activity, (2) that an adverse employment action was taken against him, and (3) that there was a causal link between the protected activity and the adverse employment action. *See EEOC v. Navy Federal Credit Union,* 424 F.3d 397, 406 (4th Cir. 2005); *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004); *Bryant*, 333 F.3d 536, 543.

The defendant contends that the plaintiff cannot establish the second element of his *prima facie* case. Specifically, the defendant claims that no adverse employment action was ever taken against the plaintiff in retaliation for any protected activity.

In *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006), the United States Supreme Court articulated an objective test for what constitutes an adverse employment action for purposes of a Title VII retaliation claim. Specifically, the Supreme Court stated that an adverse employment action is any action which might have "dissuaded (citation omitted). The retaliation provision of Title II is intended to prohibit employer actions

9

"that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *Id*. Although normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence, *id*., an employer's actions are to be considered in light of the "circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances," *id*. a reasonable worker from making or supporting a charge of discrimination." *Id*. at 2415 at 2417.

The plaintiff points to numerous incidents of alleged mistreatment, subsequent to the filing of his present Complaint, at the hands of co-workers and supervisors. The Court thinks evidence of one occasion is particularly salient. Namely, the plaintiff has testified that the defendant, in response to his allegations, moved him off of the third shift, which was supervised by Granger, onto the first. (Pl. Dep. at 99-100.) The move was intended to separate the plaintiff from his alleged harasser. *Id*. at 100. After one week, the defendant moved the plaintiff back onto the third shift. *Id*. When the plaintiff questioned the reason for the decision, Coburn allegedly held up the plaintiff's legal Complaint and said, "the lawsuit right here, that's the reason why." *Id*. It seems a fairly easy conclusion that a reasonable employee would be necessarily dissuaded from engaging in protected activity by reporting discriminatory conduct or filing a lawsuit if they knew that they would be removed from, and then antagonistically returned to, a known hostile work environment.

The undersigned, however, is tasked with considering "all the circumstances." *Burlington Northern*, 126 S. Ct. at 2417. To that end, the plaintiff has also put forward evidence of the following acts, taken subsequent to the filing of this lawsuit, which, when taken together and, in light of the incident detailed above, would likely further deter a reasonable employee from engaging in protected activity:

- Granger would blast racist music at the work place that contained the "n word" to bother the plaintiff; Coburn allegedly did not actually stop the playing of the music (Pl. Dep. at 36, 97; Coburn Dep. at 65-67);

- Granger would throw materials the plaintiff needed out into the walkway while employees stood by and laughed. *Id*. at 98; and

- Granger and other employees would refuse to communicate with Plaintiff. *Id*. at 116.

The plaintiff has testified that these actions interfered with his ability to perform his duties. *Id*.

For all these reasons, the Court need not reach the relevancy of any distinctions between alleged pre and post-Complaint retaliation. Evidence of retaliatory conduct exists, subsequent to the filing of the Complaint, such that the claim should survive summary judgment, whether or not based on all the instances alleged.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendants' motion for partial summary judgment [Doc. 24] be DENIED.

IT IS SO RECOMMENDED.

                                                        s/Bruce H. Hendricks
                                                        United States Magistrate Judge

June 3, 2010
Greenville, South Carolina